## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STEPHEN JOHNSON**                                    **CIVIL ACTION**

**VERSUS**                                             **NO. 13-2996**
                                                       **c/w13-3677**

**STEVEN RADER**                                       **SECTION "N"(2)**


## REPORT AND RECOMMENDATION

These consolidated cases were referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.[1]  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[2]  For the following reasons, I recommend that the consolidated petitions for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1] C. A. No. 13-2996, Rec. Doc. No. 5.

[2] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Stephen Johnson, is incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[3]   On April 8, 1983, Johnson was charged by bill of information in Orleans Parish with three counts of armed robbery.[4]   The third count was amended on June 20, 1983, to charge Johnson with attempted armed robbery.[5]   The first count was eventually dismissed on February 16, 1984.[6]   The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> At 3:20 a.m. on January 23, 1983 the victims, Henry Harris and his aunt, Gloria Hastings, were standing at the corner of St. Philip and Treme Streets in New Orleans.  Ms. Hastings was in the process of using a pay telephone when the appellant and his accomplice, Kevin Jackson, approached.  Jackson grabbed Ms. Hastings around the neck and Johnson placed a gun to Mr. Harris' head.  The assailants demanded that the couple give them whatever they had.  Ms. Hastings removed her jewelry and gave it to Jackson.  At this point, a police car passed by and Ms. Hastings pushed Jackson out of the way and ran towards the car.  Appellant took Mr. Harris around the corner where they could not be seen. While the officer apprehended Jackson and recovered the jewelry, the appellant released Mr. Harris and escaped.
>
> Jackson pled guilty to simple robbery and implicated Johnson in his statement.  Six months after the crime occurred, Johnson was apprehended and Ms. Hastings identified him in a line-up as the assailant who had held a gun to Mr. Harris' head.
>
> Appellant refused to plead guilty stating that he had "found the Lord" and wanted to admit his guilt on the stand. He testified at trial,

---

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 1 of 7, Bill of Information, 4/8/83.

[5]Id., handwritten amendment, 6/20/83.

[6]Id., handwritten nolle prosequi, 2/16/84.

> admitting his involvement, and stated that the gun he used was missing the firing pin and was incapable of firing.

State v. Johnson, 466 So.2d 741, 742 (La. App. 4th Cir. 1985); State Record Volume 4 of 7, Louisiana Fourth Circuit Court of Appeal Opinion, KA-2245, pages 1-2, March 12, 1985.

Johnson was tried before a jury for counts two and three on February 7, 1984, and was found guilty as charged of armed robbery and attempted armed robbery.[7]   On February 16, 1984, the state trial court sentenced Johnson on the armed robbery count to serve ninety-nine (99) years in prison at hard labor without benefit of parole, probation or suspension of sentence.[8]   The court also sentenced Johnson on the attempted armed robbery count to serve forty (40) years in prison concurrently.

On direct appeal to the Louisiana Fourth Circuit, Johnson's appointed counsel asserted five errors:[9] (1) The trial court erred in excusing a juror for cause. (2) The trial court erred in admitting the hearsay testimony of Officer Vickers. (3) The trial court erred in commenting on the evidence during trial. (4) The evidence was insufficient to sustain the conviction for attempted armed robbery. (5) The sentences were excessive.

---

[7]St. Rec. Vol. 2 of 7, Trial Minutes (4 pages), 2/7/84; St. Rec. Vol. 1 of 7, Jury Verdict (2 pages), 2/7/84; St. Rec. Vol. 4 of 7, Trial Transcript, 2/7/84; Supplement to Trial Transcript, 2/7/84.

[8]St. Rec. Vol. 4 of 7, Sentencing Transcript, p. 3, 2/16/84.

[9]St. Rec. Vol. 4 of 7, Appeal Brief, KA-2245, 10/5/84.

3

The Louisiana Fourth Circuit affirmed Johnson's convictions and sentences on March 12, 1985, finding the third claim procedurally barred under La. Code Crim. P. 841 for lack of contemporaneous objection and the remaining claims meritless.[10]

Johnson's counsel sought review in the Louisiana Supreme Court only on the issue of the trial court's comments on the evidence during trial.[11]  The court denied the application on May 24, 1985, without comment.[12]  Johnson's conviction became final ninety (90) days later, August 22, 1985, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Beginning six (6) months later, between March 4, 1986, and December 11, 1995, Johnson filed in the state courts no less than three (3) applications for post-conviction relief, four (4) motions to reconsider or correct his sentence, nine (9) writ applications in the Louisiana Fourth Circuit and three (3) writ applications in the Louisiana Supreme

---

[10]State v. Johnson, 466 So.2d at 741; St. Rec. Vol. 4 of 7, 4th Cir. Opinion, KA-2245, 3/12/85.

[11]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 85-K-0725, 4/11/85; St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 85-K-0725, 4/11/85.

[12]State v. Johnson, 469 So.2d 979 (La. 1985); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 85-K-0725, 5/24/85.

Court.[13] These overlapping filings were all eventually resolved against him, with the last of them denied as procedurally barred by the Louisiana Fourth Circuit on May 1, 1996.[14]

In the meantime, on January 5, 1996, Johnson submitted with the state trial court a fifth motion to correct his sentence based on a claim that the bill of information was defective in violation of the Double Jeopardy Clause, leaving the trial court without

---

[13]St. Rec. Vol. 1 of 7, Uniform Application for Post-Conviction Relief, dated 3/4/86; 4th Cir. Writ Application, K-5587, 5/9/86 (dated 5/7/86); 4th Cir. Writ Application, K-6001, 7/28/86 (dated 7/17/86); 4th Cir. Writ Application, K-5909, 7/9/86; Motion for Hearing, 8/13/86 (dated 8/11/86); Motion for Reduction of Sentence, 1/28/87 (dated 1/26/87); St. Rec. Vol. 2 of 7, Uniform Application for Post-Conviction Relief, 3/16/90 (dated 3/13/90); Motion for Reduction of Sentence, 4/23/91 (dated 8/14/90); Motion to Correct Illegal Sentence, 9/5/91 (dated 7/1/91); Uniform Application for Post-Conviction Relief, 10/1/91; Motion to Correct Illegal Sentence, undated; Motion to Correct Illegal Sentence, 3/20/95 (dated 3/16/95); St. Rec. Vol. 5 of 7, 4th Cir. Writ Application, 91-K-1702, 8/13/91 (dated 8/6/91); 4th Cir. Writ Application, 7/16/92 (dated 7/12/92); 4th Cir. Writ Application, 94-K-0349, 2/24/94 (dated 2/21/94); 4th Cir. Writ Application, 95-K-1012, 5/8/95 (dated 5/4/95); 4th Cir. Writ Application, 95-K-2053, 9/18/95 (dated 9/13/95); 4th Cir. Writ Application, 95-K-2719, 12/14/95 (dated 12/11/95); 4th Cir. Writ Application, 96-K-791, 4/8/96 (dated 4/4/96); St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 87-KH-1159, 5/19/87 (dated 5/20/87); La. S. Ct. Writ Application, 94-KH-1030, 4/22/94 (dated 4/19/94).

[14]State v. Johnson, 660 So.2d 441 (La. 1995); State ex rel. Johnson v. Crim. Dist. Ct., Sect. I, 520 So.2d 420 (La. 1988); St. Rec. Vol. 1 of 7, Trial Court Judgment, 3/14/86; 4th Cir. Order, K-5385, 5/12/86; 4th Cir. Order, K-5587, 5/23/86; Trial Court Order (undated-written on 4th Cir. Order from 5/23/86); 4th Cir. Order, K-5909, 7/28/86; 4th Cir. Order, K-6001, 8/15/86; Trial Court Judgment, 8/28/86; 4th Cir. Order, K-6314, 10/20/86; Trial Court Judgment, 2/11/87; La. S. Ct. Letter, 87-KH-1159, 5/19/87; Trial Court Judgment, 4/5/90; St. Rec. Vol. 2 of 7, Trial Court Judgment, 4/25/91; Trial Court Judgment, 9/9/91; Trial Court Judgment, 12/20/91; Trial Court Judgment, 6/5/92; La. S. Ct. Letter, 94-KH-1030, 4/22/94; Trial Court Judgment, 4/13/95; St. Rec. Vol. 5 of 7, 4th Cir. Order, 91-K-1702, 9/17/91; 4th Cir. Order, 92-K-1627, 9/15/92; 4th Cir. Order, 94-K-0349, 3/23/94; 4th Cir. Order, 95-K-1-12, 6/22/95; 4th Cir. Order, 95-K-2053, 9/27/95; 4th Cir. Order, 95-K-2719, 1/23/96; 4th Cir. Order, 96-K-0791, 5/1/96; St. Rec. Vol. 7 of 7, 4th Cir. Order, K-7251, 3/19/87; La. S. Ct. Order, 87-KH-1159; 2/26/88; La. S. Ct. Order, 94-KH-1030, 9/15/95.

jurisdiction.[15]  The court denied the motion without stated reasons on January 12, 1996.[16] The Louisiana Fourth Circuit denied his related writ application on May 10, 1996, finding his claims to seek untimely post-conviction review under La. Code Crim. P. art. 930.8.[17]  On November 6, 1996, the Louisiana Supreme Court also denied his subsequent writ application citing La. Code Crim. P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995).[18]

Johnson waited more than twenty (20) months, until July 28, 1998, before he submitted his next application for post-conviction relief to the state trial court.[19]  The court denied the application on September 22, 1998, as procedurally barred, noting that his "claim simply makes no sense."[20]

Undeterred, between November 24, 1998, and February 9, 2009, Johnson filed with the state trial court five (5) more applications for post-conviction relief and two (2)

[15]St. Rec. Vol. 2 of 7, Motion to Correct Illegal Sentence, dated 1/5/96.

[16]St. Rec. Vol. 1 of 7, Trial Court Judgment, 1/12/96.

[17]St. Rec. Vol. 5 of 7, 4th Cir. Order, 96-K-0925, 5/10/96; 4th Cir. Writ Application, 96-K-0925, 4/24/96 (dated 4/18/96).

[18]State ex rel. Johnson v. State, 682 So.2d 735 (La. 1996); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 96-KH-1171, 11/6/96; La. S. Ct. Writ Application, 96-KH-1171, 5/9/96 (dated 4/23/96); St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 96-KH-1171, 5/9/96.  In Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under La. Code Crim. P. art. 930.8, even if the lower court addressed the merits or did not consider timeliness.

[19]St. Rec. Vol. 3 of 7, Uniform Application for Post-Conviction Relief, 7/30/98 (dated 7/28/98).

[20]St. Rec. Vol. 1 of 7, Trial Court Judgment, 9/22/98.

6

motions to correct his sentence.[21]  These applications and motions, the four (4) related

writ applications in the Louisiana Fourth Circuit and the two (2) related Louisiana

Supreme Court writ applications were resolved against him as meritless and/or

procedurally barred.[22]  The last of this set of filings was denied by the Louisiana Supreme

Court on March 26, 2010 pursuant to La. Code Crim. P. art. 930.8 and 930.4(D), State

ex rel. Glover, and State v. Parker, 711 So.2d 694 (La. 1998).[23]

More than two years later, on July 26, 2012, he submitted his final application for

post-conviction relief to the state trial court, asserting the ineffective assistance of

counsel claim currently before this federal court.[24]  The state trial court denied the

---

[21]St. Rec. Vol. 1 of 7, Uniform Application for Post-Conviction Relief, dated 8/31/99; St. Rec.
Vol. 2 of 7, Motion to Show Cause for Successive Application, dated 11/24/98; Extraordinary Writ or
Motion to Correct Illegal Sentence, 2/12/01; Extraordinary Writ or Mandamus, dated 3/1/04; St. Rec.
Vol. 3 of 7, Uniform Application for Post-Conviction Relief, dated 11/24/98; Uniform Application for
Post-Conviction Relief, 7/30/98 (dated 7/28/98); Uniform Application for Post-Conviction Relief, dated
6/23/08; Motion to Correct an Illegal Sentence, dated 2/9/09.

[22]State ex rel. Johnson v. State, 17 So.3d 957 (La. 2009); St. Rec. Vol. 1 of 7, Trial Court
Judgment, 2/8/99; St. Rec. Vol. 2 of 7,  Trial Court Judgment, 8/21/01; Trial Court Judgment, 5/26/04;
St. Rec. Vol. 3 of 7, Trial Court Judgment, 7/21/08; Trial Court Judgment, 4/7/09; La. S. Ct. Letter,
2009-KH-1221, 6/3/09. St. Rec. Vol. 6 of 7, 4th Cir. Writ Application, 99-K-0327, 2/9/99 (dated 2/2/99);
4th Cir. Order, 99-K-0327, 3/30/99; 4th Cir. Writ Application, 2004-K-1082, 6/28/04 (dated 6/18/04);
4th Cir. Order, 2004-K-1082, 8/25/04; 4th Cir. Writ Application, 2008-K-1101, dated 8/18/08; 4th Cir.
Order, 2008-K-1101, 9/25/08; 4th Cir. Writ Application, 2009-K-0419, 4/3/09 (dated 3/31/09); 4th Cir.
Order, 2009-K-0419, 4/28/09; St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2008-KH-2627, 9/4/09; La. S. Ct.
Writ Application, 08-KH-2627, 11/7/08 (postmarked 10/22/08, dated 10/17/08); La. S. Ct. Writ
Application, 09-KH-1221, 6/3/09 (dated 5/20/09).

[23]State ex rel. Johnson v. State, 29 So.3d 1253 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order,
2009-KH-1221, 3/26/10.  In Parker, the Louisiana Supreme Court held that the limitation period under
La. Code Crim. P. art. 930.8 preempts the language in La. Code Crim. P. art. 882 dealing with the time
for filing a motion to correct an illegal sentence.

[24]St. Rec. Vol. 6 of 7, Application for Post-Conviction Relief, dated 7/26/12.

application as untimely and otherwise meritless on August 20, 2012.[25]  The Louisiana Fourth Circuit denied his subsequent writ application on October 11, 2012, finding no error in the trial court's ruling.[26]  The Louisiana Supreme Court also denied his related writ application on April 5, 2013, citing La. Code Crim. P. art. 930.8 and State ex rel. Glover.[27]

## II.   FEDERAL HABEAS PETITION

On May 13, 2013, the clerk of this court filed Johnson's first petition for federal habeas corpus relief in which he alleges that he received ineffective assistance of counsel when his counsel did not explain that, if he rejected the plea offer from the State, he would received a significantly greater sentence.[28]  Less than two weeks later, on May 23, 2013, the clerk received and filed Johnson's second petition for federal habeas corpus relief in which he asserted the same ineffective assistance of counsel claim and an

---

[25]St. Rec. Vol. 6 of 7, Trial Court Judgment, 8/20/12.

[26]St. Rec. Vol. 6 of 7, 4th Cir. Order, 2012-K-1363, 10/11/12; 4th Cir. Writ Application, 2012-K-1363, 9/17/12 (dated 9/7/12).

[27]State ex rel. Johnson v. State, 110 So.3d 1069 (La. 2013); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2012-KH-2481, 4/5/13; La. S. Ct. Writ Application, 12-KH-2481, 11/20/12 (postmarked 11/5/12, dated 11/5/12).

[28]C.A. No. 13-2996, Rec. Doc. No. 1.

additional claim that his sentences violated the Double Jeopardy Clause and Louisiana law.[29]  I consolidated the matters on May 28, 2013.[30]

The State filed a response in opposition to Johnson's petitions, arguing that his petitions were not timely filed and that he has failed to prove a basis for excusing the untimely filing or for the application of equitable tolling.[31]

Johnson filed a reply to the State's opposition, arguing that he has timely filed his petitions following the issuance of the United States Supreme Court's rulings in Missouri v. Frye, __ U.S. __, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376 (2012).[32]  Construed broadly, Johnson's arguments contend that the holdings in these cases afford him a renewed opportunity to raise a claim of ineffective assistance of counsel during the plea negotiations.  Johnson also claims that he is actually innocent and that his counsel never advised him of the risk of a greater sentence if he rejected the plea offer of seven (7) years in prison for the two counts for which he is now serving a sentence thirteen (13) times greater. Johnson further contends that this court should overlook any state imposed procedural bar to his claims in the interest of justice.

---

[29]C.A. No. 13-3677, Rec. Doc. No. 1.

[30]C.A. No. 13-2996, Rec. Doc. No. 5; C.A. No. 13-3677, Rec. Doc. No. 2.

[31]C.A. No. 13-3677 c/w 13-2996, Rec. Doc. No. 12.

[32]C.A. No. 13-3677 c/w 13-2996, Rec. Doc. No. 13.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Johnson's petitions, which, for reasons discussed below, are deemed filed in this court on May 3, 2013 and May 13, 2013, respectively.[34]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims were adjudicated on the merits in state

---

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Johnson's first petition in C.A. 13-2996 was filed by the clerk of court on May 13, 2013, when the filing fee was received.  He signed the petition on May 3, 2013, which is the earliest date appearing in the record on which he could have delivered the pleading to prison officials for mailing to the court. Johnson's second petition in C.A. 13-3677 was filed by the clerk of court on May 23, 2013, when the filing fee for that case was received. He signed the petition on May 13, 2013, which is the earliest date appearing in the record on which he could have delivered the pleading to prison officials for mailing to the court. The fact that he paid the filing fee in each case does not alter the application of the federal mailbox rule to his pro se petitions. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As stated above, the State argues that Johnson's petitions were not timely filed. In his reply to the State's response, Johnson alleges that his petitions are timely filed based on the decisions in Frye and Lafler and his actual innocence.[35]  Pretermitting consideration of the obvious procedural bars imposed by the state courts that would render Johnson's claims procedurally defaulted from consideration by this court, and for the following reasons, I find that the record supports the State's conclusion that Johnson's petitions were not timely filed.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final or the date on which the constitutional right asserted was initially recognized and made retroactive by the Supreme Court.[36]  Duncan

---

[35]Rec. Doc. No. 7.

[36]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
    A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.      the date on which the constitutional right asserted was initially recognized by the

v. Walker, 533 U.S. 167, 179-80 (2001). Johnson's conviction became final on August 22, 1985, more than 28 years ago.

Construing his arguments broadly, Johnson contends that the Supreme Court's rulings in Frye and Lafler, both issued March 21, 2012, provided a new basis for his claims that his counsel provided ineffective assistance during the plea negotiations. Under federal law, the statutory basis for such an argument in the AEDPA would be Section 2244(d)(1)(C), which provides that the one-year AEDPA statute of limitations begins to run on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Johnson's argument, however, must be rejected in this case.

The Supreme Court in Frye held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408. In the companion case of Lafler, the Court specifically addressed assistance of counsel when there is a rejected plea offer:

---

Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

12

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

Lafler, 132 S. Ct. at 1387.

Since issuance of these decisions, the United States Court of Appeals for the Fifth Circuit has held that neither Frye nor Lafler announced a new rule of constitutional law for purposes of habeas review under the AEDPA. In re King, 697 F.3d 1189, 1189 (5th Cir. 2012); see also, Miller v. Thaler, 714 F.3d 897, 902 (5th Cir. 2013) ("Frye did not announce a new rule of constitutional law because 'it merely applied the Sixth Amendment right to counsel to a specific factual context.'") (quoting In re King, 697 F.3d at 1189); Bowers v. Stephens, No. 13-CV-413, 2013 WL 5651263, at *2 (N.D. Tex. Oct. 11, 2013) (Neither Frye nor Lafler provide a new trigger for the AEDPA's filing period under Section 2244(d)(1)(C) or (D)). As such, the rulings in Frye and Lafler could not retroactively apply to create a new trigger for the AEDPA grace filing period in Johnson's case.

Even if considered further, Johnson's case is absolutely distinguishable from both Frye and Lafler. Unlike the defendant in Frye, Johnson concedes that his counsel informed him of the plea offer from the State of a seven-year sentence in return for his guilty plea to the second and third counts of armed robbery and attempted armed robbery,

with the dismissal of the first count.  His counsel therefore fully informed Johnson of the plea.

Unlike the case in <u>Lafler</u>, the record in Johnson's case negates any suggestion that counsel did not advise Johnson that he faced a significantly greater sentence if he rejected the offer and proceeded to trial.  Johnson clearly displayed his knowledge of the consequences of rejecting the plea offer during his testimony at trial:

> Q    Mr. Johnson, what's going to happen to you if these people decide that you're guilty of the crime of armed robbery?  [. . .] Is this going to change the way you feel about anything?
>
> A    No, sir, definitely not because I have already prepared myself.  I have already said that **if I did get 99 years** and I do get found guilty, that I always remain faithful to the Lord if not nobody else.  That's the way I feel.
>
> Q    You're prepared to accept the verdict of this jury whatever it may be?
>
> A    I am prepared, sir.  I am prepared.
>
> Q    Mr. Johnson, did I or anyone else who represented you tell you that they would try and make a deal for you if you wanted to plead guilty to something?  Did we offer to try to **work out a deal for you**?
>
> A    **Yes, sir**.
>
> Q    What was your response to that?
>
> A    **No, I would not take a deal**.

(emphasis added) State Record Volume 4 of 7, Trial Transcript, pages 42-43, February 7, 1984.  Thus, even if either Supreme Court decision announced a new retroactively applicable rule, Johnson would have no basis for an ineffective assistance of counsel claim.

Therefore, the appropriate trigger for commencement of the applicable statute of limitations under Section 2244(d) is the finality of conviction on August 22, 1985. Under a literal application of the statute, Johnson had until August 22, 1986, to file a federal habeas corpus petition, which he did not do.

However, the Fifth Circuit has granted habeas petitioners one year after the effective date of the AEDPA within which to file timely petitions pursuant to 28 U.S.C. §§ 2254 and 2255. Flanagan, 154 F.3d at 200; United States v. Flores, 135 F.3d 1000, 1004 (5th Cir. 1998), cert. denied, 525 U.S. 1091 (1999). The court in "Flores concluded that habeas petitioners must be afforded a reasonable time after AEDPA's effective date for the filing of petitions for collateral relief based upon claims that would otherwise be time-barred before AEDPA's April 24, 1996 effective date." Flanagan, 154 F.3d at 200 (citing Flores, 135 F.3d at 1004-05). "[P]etitioners . . . whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief." Id. (citing Flores, 135 F.3d at 1005).

Because Johnson's conviction became final before AEDPA's effective date, he was required to file the instant federal habeas petition no later than April 24, 1997. Under the applicable mailbox rule, Johnson filed the first of his consolidated federal petitions on May 3, 2013, more than sixteen years after the allowable grace period, and it must be dismissed as untimely, unless the one-year statute of limitations period was

interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

In his reply memorandum, Johnson offers the conclusory suggestion of his actual innocence as a basis for overcoming the untimeliness of his federal petition and its dismissal without review of the merits of his claim, citing McQuiggin v. Perkins, __ U.S. __, 133 S. Ct. 1924 (2013).  In McQuiggin, the United States Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." Id. at 1928.  In recognizing the stringent standards of this exception to Section 2244(d), the Court held that "[t]o invoke the miscarriage of justice exception to

16

AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Id., at 1935 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

In this case, Johnson has offered no evidence of his factual innocence, much less any new evidence, that would undermine the verdict reached by the jury in his case or lead this court to conclude that a reasonable jury would now question his guilt.  Accord, Golmon v. Director, TDJC–CID, No. 13-CV-325, 2013 WL 3724838, at *1 (E.D. Tex. Jul. 15, 2013).  His unsupported declaration of his innocence falls far short of meeting the threshold level of proof required to invoke an actual innocence or miscarriage of justice exception to AEDPA's statute of limitation.  See Golmon, 2013 WL 3724838, at *1 (petitioner's failure to present any evidence of innocence was insufficient to invoke exception); Sullivan v. Walker, No. 12-CV-833, 2013 WL 2465366, at *3 (N.D. Tex. June 14, 2013) (same).

Johnson does not assert any other reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled.  See Holland v. Florida, 560 U.S. 631, __, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596,

599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain

language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies also are not other collateral review for purposes of the tolling calculation. <u>Osborne v. Boone</u>, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table,

Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); <u>Brown v. Cain</u>, 112 F. Supp.2d 585, 587 (E.D. La. 2000), <u>aff'd</u>, 239 F.3d 365 (5th Cir. 2000); <u>Gerrets v. Futrell</u>, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); <u>Jones v. Johnson</u>, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); <u>Grayson v. Grayson</u>, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

As discussed above, AEDPA's one-year grace filing period for pre-AEDPA convictions like Johnson's ran from the effective date of the act, April 24, 1996. Just before that date, however, on January 5, 1996, Johnson filed his fifth motion to correct his sentence with the state trial court. The motion was denied by the court on January 12, 1996, and Johnson pursued review of that order in the Louisiana Fourth Circuit and the Louisiana Supreme Court. The matter was resolved by the Louisiana Supreme Court on November 6, 1996. Affording Johnson the benefit of every doubt to allow tolling for this entire period, I will consider the one-year grace filing period to have been tolled from April 24, 1996 through November 6, 1996.

The grace filing period then began to run on November 7, 1996, and did so without interruption for 365 days, until November 7, 1997, when it expired. Johnson had <u>no</u> properly filed state post-conviction or other collateral review proceedings, or any

other pleadings of any sort pending in the state courts during that time.  Johnson instead waited another nine (9) months after that period before he signed and submitted his next application for post-conviction relief to the state trial court on July 28, 1998.  In addition, as outlined above, Johnson allowed another two years to pass without any pending state court filings between March 26, 2010, and July 26, 2012.

Johnson did not submit his first federal petition for filing with this court until May 3, 2013, which was almost fifteen years and six months after the AEDPA's one-year grace filing period expired on November 7, 1997.  Johnson's federal petitions were not timely filed and must be dismissed with prejudice for that reason.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Johnson's consolidated petitions for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[37]

New Orleans, Louisiana, this ____13th____ day of December, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[37]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.